IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| RONNIE SHANE DANDRIDGE, | ) | CIVIL ACTION NO. 9:12-3066-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

      Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[2] on March 16, 2009 (protective filing date), alleging disability as of August 11, 2006

---

    [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

    [2]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



due to a back disorder and herniated disc. (R.pp. 179-183, 197).[3] Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 7, 2011. (R.pp. 44-69). The ALJ thereafter denied Plaintiff's claims in a decision issued January 14, 2011. (R.pp. 22-36). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-7).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

---

[3]Plaintiff had previously applied for disability benefits at least three prior times, all of which had been denied. See (R.pp. 76-91, 149-178).



somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was only thirty-three (33) years old when he alleges he became totally disabled,[4] has an eleventh grade education with past relevant work experience as a sheet metal mechanic and construction worker. (R.pp. 49, 51, 53, 198, 202). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairment[5] of disorders of the back, thereby

---

[4]Cf. 20 C.F.R. § 404.1563(c)[Noting that if the claimant is a younger person; "we generally do not consider that your age will seriously affect your ability to adjust to other work."]; City of New York v. Heckler, 578 F.Supp. 1009, 1115 (D.C.N.Y. Jan. 11, 1984)["For younger individuals . . . , the presumption of ability to work is effectively conclusive."].

[5]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do (continued...)



rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of sedentary work,[6] and was therefore not entitled to disability benefits. (R.pp. 27-28, 34 -35).

Plaintiff asserts that in reaching this decision the ALJ erred by failing to accept the opinion of Plaintiff's treating physician, Dr. Steven Poletti, that Plaintiff was totally disabled; by failing to conclude based on the totality of the evidence in this case that Plaintiff was totally disabled; and by failing to make a function-by-function analysis of Plaintiff's RFC in compliance with SSR 96-8p. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.

## I.

The medical record reflects that Plaintiff had been experiencing back pain since before January of 2006, when he presented to Dr. Michael Smith complaining of low back pain in the lumbar region bilaterally that had existed "for some time". Radiographic studies at that time noted no abnormalities; (R.p. 236); while an x-ray of Plaintiff's spine showed a mild decreased disc height at L5-S1. (R.p. 237).

---

[5](...continued)
basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[6]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



Plaintiff alleges he became disabled as a result of a work related injury he suffered on August 11, 2006.  On August 22, 2006, Plaintiff returned to Dr. Smith complaining that he had had a sharp pain in his back when he was doing some heavy lifting, and that ever since then he had had severe low back pain and stiffness.  Dr. Smith noted that Plaintiff was able to ambulate without difficulty, and diagnosed him with low back pain with associated muscle spasm.  (R.p. 235).  Dr. Smith also had an MRI performed, which noted disc desiccation and disc space narrowing at the L5-S1 level, with a broad disc protrusion on the left.  There was also "mild" effacement of the epidural soft tissues and thecal sac without significant central canal stenosis, "mild" effacement of the left S1 nerve root, "mild" left neural foraman narrowing, with no significant right neural foraman narrowing.  A small, broad central disc protrusion was identified at the L4-5 level with effacement of epidural soft tissues and the thecal sac, but with no significant central canal stenosis or neural foraman narrowing being identified or noted.  The remaining lumbar disc levels were within normal limits.  (R.pp. 232-234).

Plaintiff was referred by Dr. Smith to the Southeastern Spine Institute, where he was seen by Dr. Poletti for an evaluation on September 13, 2006.  Plaintiff told Dr. Poletti that he had been suffering from back pain "off and on" since his early twenties, and complained of low back pain, buttocks pain, hip pain, and leg pain (left greater than right).  On examination Plaintiff was noted to have a straight spine with normal hip motion and "no long tract signs".  His knee and ankle jerk reflexes were intact, although Plaintiff exhibited a "slight diminution of push-off on his left side" and complained of pain with extension.  Dr. Poletti noted Plaintiff's MRI indicating a central disc herniation at L4-5 and left-sided disc herniation at L5-S1, but he did not believe Plaintiff needed surgery.  Rather, Dr. Poletti diagnosed Plaintiff with a disc herniation left L5-S1, and prescribed an



epidural injection. (R.p. 241). Dr. Poletti also completed a Patient Status Report indicating that Plaintiff could not work, but did not otherwise make any findings in this Report. (R.p. 459).

Dr. Poletti saw Plaintiff for a followup visit on October 24, 2006, where it was noted the epidural injection had "helped him". Plaintiff had positive straight leg raising on the left, while his Achilles reflex was present but diminished. No other findings were noted, and Dr. Poletti recommended only "observation" of Plaintiff's condition and that Plaintiff should follow-up with him on an as-needed basis. (R.p. 238). Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability].

On November 22, 2006, state agency physician Dr. Jean Smolka reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which she opined that Plaintiff could perform light work[7] with the ability to frequently climb ramps and stairs, balance, and kneel; occasionally climb ladders/ropes/scaffolds, stoop, crouch and crawl; with no other limitations. (R.pp. 242-249). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

The next medical records cited to by the parties are not until June 18, 2007, seven months later, when Plaintiff underwent a consultative examination by Dr. Ifeanyi Nwaekwu. Plaintiff presented to Dr. Nwaekwu "with no significant past medical history except for chronic lower back pain". Plaintiff told Dr. Nwaekwu that the pain he experienced was at a level 5 on a 10

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



point scale, that he was unable to lift more than 20 pounds (i.e., the level for light work), and that his symptoms became worse if he had to stand for more than about 10 to 30 minutes. (R.p. 250). On examination Plaintiff was found to "not [be] in . . . painful distress", his muscle tone and reflexes were normal in both his upper and lower extremities, he had 5/5 (full) strength in both his upper and lower extremities, and he had no sensory deficits. Cf. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. Plaintiff had a normal gait, he was able to get on and off the examination table without any assistance, and he ambulated without any assistive devices. Plaintiff did exhibit tenderness to palpation in the lumbosacral region and his straight leg raise test was positive bilaterally, but he had a normal range of motion of the hip and knee joints with no swelling noted. Plaintiff was also able to squat and get up without assistance, although with some associated back pain; he could walk tandem and walk on tiptoes without any pain; and he had normal pedal pulses and no pedal edema. An x-ray performed that day showed no significant changes from his x-ray of January 23, 2006, with Dr. Nwaekwu noting that Plaintiff had normal disc height on vertible bodies, and no spurs or osteophytes. Dr. Nwaekwu diagnosed Plaintiff with lumbosacral spine disc herniation at L4-S1, and opined that Plaintiff would be "unable to return to his previous job as a heating and air repairman because that involves heavy lifting that may aggravate his disc herniation". However, he also noted that Plaintiff was "currently not in acute pain [and was] not a surgical candidate . . . .", and opined that Plaintiff would benefit from retraining in another occupation that did not require heavy lifting or prolonged standing. See generally, (R.pp. 251-253). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician];



see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

On August 28, 2007, Plaintiff had another epidural steroid injection at the Southeastern Spine Institute. (R.p. 262). The following month, a second state agency physician, Dr. Jim Liao, completed a Physical Residual Functional Capacity Assessment after review of Plaintiff's records and opined that Plaintiff had the RFC for light work with the ability to frequently climb ramps and stairs, balance, kneel, crouch and crawl; occasionally climb ladders/ropes/scaffolds and stoop; with no other limitations. (R.pp. 263-270).

Ten months later, on July 15, 2008, Dr. Poletti signed a second Patient Status Report, again indicating that Plaintiff "cannot work" due to "severe lumbar disc disorder". (R.p. 458). There is no indication that Dr. Poletti saw the Plaintiff before issuing this opinion,[8] nor are there any medical records or findings accompanying this opinion. However, Plaintiff did have a vocational rehabilitation examination performed by Dr. Sanjay Kumar on September 9, 2008. On examination Plaintiff was found to have no edema, cyanosis, or deformity; there was no swelling in either knee; and he had full range of motion in all joints. Plaintiff also continued to have 5/5 strength in both his upper and lower extremities. Plaintiff's flexion, extension, and lateral flexion were all within normal limits in both his C spine and lumbar spine, his hip rotation and extension were normal, ankle flexion was normal, and sitting straight leg test was normal. Plaintiff did complain of pain in his lower back when flexing at 60 degrees on both sides while in the supine position, and he advised Dr. Kumar that he was receiving epidural steroid injections every three months. He had no joint

---

[8]Indeed, it appears that Dr. Poletti had not seen the Plaintiff since at least October 2006. See (R.pp. 238, 287)



abnormality in his hands with no swelling and full range of motion, and full (5/5) grip strength. Fine and gross manipulation was normal, he had no gait disturbances, no muscle weakness, he was not using any ambulatory assistive devices, and his tandem walk, heal-to-toe and squatting were all normal. Dr. Kumar concluded his report by noting that Plaintiff had no difficulty getting on and off of the examination table. (R.pp. 272-274).

Dr. Liao thereafter issued a new Physical Residual Functional Capacity Assessment on September 16, 2008, in which he upgraded Plaintiff's RFC to medium work[9] with the ability to frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl; occasionally climb ladders/ropes/scaffolds; with no other limitations. (R.pp. 277-284).

Plaintiff thereafter returned to see Dr. Poletti on October 23, 2008 for a follow-up. Dr. Poletti indicated in his office notes that this was the first time he had seen the Plaintiff in over two years. Plaintiff told Dr. Poletti that he was filing for disability, complained of "extreme weakness in his legs" and that he "can't feel his legs", and asked for another steroid injection. Dr. Poletti stated that Plaintiff would never return to "exertional level work" and that he might be a candidate for long term disability, but there were no examination findings noted. (R.p. 287). Plaintiff thereafter had another epidural steroid injection on November 25, 2008. (R.p. 286).

Plaintiff returned to see Dr. Poletti on December 9, 2008, at which time Dr. Poletti noted that Plaintiff had undergone neck x-rays which showed "some mild spondylosis but nothing significant". With respect to the lumbar spine, Dr. Poletti noted that Plaintiff had not had an MRI in two years, and recommended Plaintiff's MRI scan be updated. (R.p. 285). While again no

---

[9]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



examination findings are noted, Dr. Poletti nevertheless completed another Patient Status Report stating that Plaintiff could not work. (R.p. 456). Plaintiff thereafter underwent a new MRI on January 7, 2009, which revealed essentially the same findings as his previous MRI; (R.pp. 288-289); following which Dr. Poletti issued another Patient Status Report stating that Plaintiff "cannot work". (R.p. 455).

Plaintiff was seen by his family physician, Dr. Smith, on April 8, 2009, where his chief complaint was back pain. Dr. Smith noted that Plaintiff was in no acute distress, and that his extremities exhibited no cyanosis, clubbing or edema. (R.p. 290). On May 7, 2009, Dr. Poletti completed another Patient Status Report stating that Plaintiff "cannot work", although it does not appear that Dr. Poletti actually saw the Plaintiff on that date, as there are no medical visit or examination records accompanying this opinion. (R.p. 454). That same month, Dr. Liao completed an updated Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the RFC for light work with the ability to frequently balance and kneel; occasionally climb ramps/stairs, stoop, crouch and crawl; but never climb ladders/ropes and scaffolds, with no other limitations. (R.pp. 298-305).

On June 10, 2009, Dr. Poletti completed a Physician's Report, this time opining that Plaintiff was permanently and totally disabled from working in his "usual occupation". (R.p. 453). He had not seen Plaintiff when he issued that opinion, but did subsequently see the Plaintiff for a follow-up examination on July 23, 2009, which was the first time he had seen the Plaintiff in over six months. On this visit, Plaintiff complained of severe pain radiating into his leg with related effects. Dr. Poletti opined that he had "increased sequestration of his disc". Plaintiff was noted to be walking with a cane, and Dr. Poletti recommended that he have a "scan". (R.p. 396). Plaintiff



thereafter underwent an MRI, following which Dr. Poletti opined that it showed a "sequestered disc herniation lateralized into the left of the L5-S1 level". Dr. Poletti opined that Plaintiff was at risk of re-herniation and risk of continued back pain, and recommended him for surgery. (R.p. 397).

Plaintiff underwent a laminectomy-discectomy at L5-S1 on August 20, 2009. (R.pp. 345, 394). At a two week post operative visit to the Southeastern Spine Institute on September 4, 2009, Physicians Assistant Amanda Thurber noted that Plaintiff was "doing fairly well", his incision was healing well, and AP/lateral lumbar films showed no signs of collapse or instability. Plaintiff complained of some increased swelling in his left foot, but stated that he was walking daily using a brace and cane for assistance. (R.p. 393). At a second post operative visit on October 1, 2009, Physicians Assistant Justin Swain noted that Plaintiff reported having difficulty walking secondary to pain in his leg, but that he "does feel different than . . . before surgery". On examination, Plaintiff was found to be ambulatory with an antalgic gait, left side favored; he was noted to have dysesthesia in his left lower extremity (subjective), he had a slightly diminished Achilles tendon reflex, with no other deficits noted. P. A. Swain indicated that updated imaging might be considered due to Plaintiff's persistent "subjective" radiculopathy. (R.p. 408).

When Plaintiff returned to the Southeastern Spine Institute for a six week followup on November 19, 2009, he reported that Lyrica was helping with the burning sensation in his left hip and buttock, but he still complained of left sided hip pain and muscle spasms. Plaintiff had a positive left straight leg raise, his ankle dorsiflexion and big toe extension strength were good bilaterally, and he was ambulatory using a cane for assistance. (R.p. 409). Plaintiff returned six weeks later for a follow-up visit on January 7, 2010, and was seen by P. A. Thurber. Plaintiff continued to complain of "chronic severe back pain" as well as "intense spasms on his left leg and



across his lower back . . . .", but was ambulatory with an antalgic gait and using a cane for assistance. (R.p. 424).

An MRI of the lumbar spine performed on March 23, 2010 revealed a normal bony alignment and normal marrow signal apart from modic changes, but no evidence of a congenital anomaly of the spine. Visualized paraspinal soft tissues were unremarkable, while images of the hips, sacroiliac joints, piriformis muscles and proximal sciatic nerves revealed no abnormality. Views of the distal thoracic spine revealed a normal spinal cord with no evidence of abnormal disc, Plaintiff had normal disc space height and signal without evidence of bulge herniation at L1-2, L2-3 and L3-4; there was no evidence of root displacement or compression at L4-5, although there was signal loss and a central protrusion of disc material with annular tearing; while L5-S1 revealed the previous left-sided laminectomy with some residual protrusion of disc material and mild displacement of the Left S1 nerve root. (R.pp. 438-439).

Plaintiff was seen by P. A. Swain at the Southeastern Spine Institute three days later, who noted that Plaintiff's MRI confirmed that he had degenerative disc disease at L5-S1 with a history of laminectomy for disc herniation. Swain noted that while Dr. Poletti had discussed fusion surgery with the Plaintiff in the past, that was not something he would consider at this time because Plaintiff was "not in a neurologic emergency at this point". Swain suggested Plaintiff consider obtaining more focused pain management with the Institute's management doctors, but Plaintiff demurred, saying he would "like to give this some thought". Swain recommended "no changes to [Plaintiff's] current restrictions. (R.p. 437).

On April 7, 2010, state agency physician Dr. Tom Brown reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he opined that



Plaintiff had the RFC for light work with the ability to occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; but never climb ladders/ropes and scaffolds. He was also limited in his ability to reach overhead in all directions, but had no other limitations. (R.pp. 440-447).

Plaintiff returned to the Spine Institute on August 2, 2010 and was seen by P. A. Thurber. Plaintiff's physical examination was "unchanged", with no focal deficits noted. Plaintiff was told to continue with his regularly scheduled visits on an every four to six month basis, and that he should use pain medication to manage his symptoms. (R.p. 452).

On September 21, 2010, Plaintiff was seen by Dr. William Richardson for a consultative examination on referral from Dr. Poletti. On examination, Dr. Richardson found Plaintiff to be alert and oriented X3 and in no acute distress. Plaintiff had a "slightly antalgic gait", and exhibited decreased range of motion with hip flexion and extension. However, Plaintiff's strength was found to be 4/5 in the left lower extremity, and 5/5 in the right lower extremity; sensory was grossly intact; with only some "mild" muscle wasting on the left compared to the right. Plaintiff was prescribed medications for management of his pain. (R.pp. 472-474).

At his regularly scheduled follow-up visit to the Spine Institute on December 6, 2010, Plaintiff was seen by P. A. Swain. On examination Plaintiff exhibited a loss of range of motion in his lumbar spine with significant antalgic gait, complained of dysesthesia in the left lower extremity (subjective), and was ambulating with a cane. Swain noted that due to Plaintiff's physical limitations as well as his analgesic needs, "[c]ertainly any type of construction or exertional job would be out of the question for him". (R.p. 469).

## II.

The ALJ reviewed these medical records and opinions, including Dr. Poletti's records



and opinions, together with Plaintiff's subjective testimony as to the extent of his pain and limitations, and concluded that Plaintiff had the RFC for sedentary work with the restriction that he could not climb ladders/ropes or scaffolds, only occasionally perform all other postural movements and reach overhead, with the necessity of being able to alternate positions at will. (R.p. 28). In reaching this conclusion, the ALJ noted the medical records showing that Plaintiff was generally treated conservatively for his complaints with pain medication and periodic (every three months) epidural injections, that examinations had generally reflected that Plaintiff had normal muscle tone and reflexes with full strength in both his upper and lower extremities, that he was only rarely found to be ambulating with anything other than with an essentially normal gait, that Plaintiff's MRIs and x-rays generally revealed relatively mild abnormalities, and that he was not in a neurologic emergency. See generally, (R.pp. 30-33). The ALJ further noted the objective findings of Dr. Nwaekwu that, although Plaintiff's condition would not allow him to return to his past relevant "heavy" work as a repairman, he otherwise did not have impairments as limiting as claimed by the Plaintiff, an opinion which the ALJ accorded great weight. See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability].

The decision also reflects that the ALJ gave Plaintiff every benefit of the doubt by reducing his RFC to sedentary work with the limitations set forth in the decision, even though these limitations were greater than those opined to by the state agency physicians or were reflected in the objective evidence. (R.pp. 33-34). See generally, (R.pp. 242-249, 251-253, 263-270, 272-274, 277-284, 298-305, 440-447, 472-474). Cf. Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Haynes v. Astrue, No. 09-484,



2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that [he] suffers from pain which precludes [him] from substantial gainful activity."]; Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

    The ALJ also noted inconsistencies in the record as part of his findings, such as Plaintiff's statement that he was using a cane because it had been prescribed by the Spine Institute, when there was no evidence of any such instruction; Plaintiff's testimony that he had difficulty standing and moving around notwithstanding examinations showing that he had normal muscle tone and full strength in both his upper and lower extremities; as well as the fact that the extent of Plaintiff's daily activities were inconsistent with the level of functioning claimed.  (R.pp. 29-32, 49, 51, 59-65).  See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities]; see generally Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations]; Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

    As for Dr. Poletti's opinion of disability, Plaintiff is correct that a treating physician's opinion as to a patient's condition and functional limitations should ordinarily be accorded great weight.  See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions].  However, the opinions of a treating physician are not entitled to great weight

15



where they are contradicted by the physician's own treatment notes, or by other evidence. <u>See</u> <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; <u>Burch v. Apfel</u>, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.].

        Here, the ALJ found that Dr. Poletti's opinion that Plaintiff could not perform any work was entitled to little weight because it was inconsistent with the other evidence of record, and also because a finding that a claimant is "disabled" is a decision reserved to the Commissioner. <u>See</u> <u>Craig</u>, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; <u>Castellano v.</u> <u>Secretary of Health & Human Servs.</u>, 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]. The undersigned can discern no reversible error in the ALJ's findings and conclusions. Dr. Poletti's treatment notes generally do not set forth any examination findings, while his physician statements that Plaintiff "cannot work" are conclusory without citation to any objective evidence, nor do they contain any RFC findings. <u>Cf.</u> <u>Craig</u>, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; <u>Cruse</u>, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; <u>see also</u> <u>Jolley v. Weinberger</u>, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an

16



inference that he was not disabled].

Nevertheless, the ALJ did give Dr. Poletti's opinion "some weight" to the extent he found that Plaintiff was not able to return to "exertional level work activity", as well as limited weight to P. A. Swain's conclusion that Plaintiff's physical limitations and analgesia needs would prevent him from performing any type of construction or exertional job. (R.pp. 33-34, 286, 453, 469). See 20 C.F.R. § 404.1513(d)(1), SSR 06-03p [discussing weight to be given to opinions of physician's assistants]. However, this conclusion did not mean Plaintiff was totally disabled. Rather, the ALJ's conclusion and RFC finding that Plaintiff could perform at least sedentary work with the restrictions noted is consistent with the findings of Drs. Nwaekwu, Kumar, and Richardson that Plaintiff's limitations were not totally disabling. (R.pp. 251-253, 272-274, 472-474). Hunter, 993 F.3d at 35 [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson, 402, U.S. at 408 [assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]; see also Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

After a review of the decision and the record in this case, the undersigned does not find that the ALJ improperly considered and evaluated Dr. Poletti's records or opinions as part of his analysis of the overall record and evidence in this case, nor does the undersigned find that the ALJ failed to provide an explanation for his treatment of Dr. Poletti's opinion. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; see also Thomas, 331 F.2d



at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]. The record contains substantial evidence to support the findings and conclusions of the ALJ, and Plaintiff's argument that the ALJ committed reversible error by not accepting the extent of limitation opined to by Dr. Poletti, or that he otherwise did not justify in his decision why he was rejecting this opinion or cite to any other contrary evidence, is without merit. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; see Burch, 9 Fed.Appx. at 255 [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; see also Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"].

### III.

Finally, Plaintiff also contends that the ALJ failed to properly evaluate his RFC. Specifically, Plaintiff complains that the ALJ found that Plaintiff could perform sedentary work without making any findings as to whether the functions required by sedentary work were precluded by Plaintiff's limitations. Plaintiff also complains that the ALJ failed to perform the requisite function-by-function assessment in reaching his RFC. These arguments are without merit.

A review of the decision confirms that the ALJ made specific findings with respect to Plaintiff's sedentary capacity, concluding that Plaintiff was able to lift and carry up to ten pounds occasionally and lesser amounts frequently; sit for six hours in an eight hour day and stand and walk occasionally; never climb ladders, ropes or scaffolds; only occasionally perform all other postural



movements and reach overhead; with the need to alternate positions at will.  (R.p. 28).  These functional limitations are generally consistent with those opined to by the state agency medical consultants, as well as the finding of Dr. Nwaekwu that Plaintiff could not perform any heavy lifting job and had spinal tenderness but was otherwise able to walk without pain with normal range of motion of the hip and knee joints and could be retrained in another occupation that did not require heavy lifting or prolonged standing.  Even though, following his surgery in August 2009, Plaintiff continued to have complaints, his strength and range of motion improved and he was able to engage in such activities as attending his children's school activities and help with their homework, walk ocassionally for exercise, carry a gallon of milk, live in a second floor apartment, and engage in various sedentary activities.  (R.pp. 29-32, 49, 51, 59-65).  Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; see Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].  Further, Dr. Richardson's examination, which was also post-surgery, found only "mild"muscle wasting on the left compared to the right, that Plaintiff retained full strength in his right lower extremity, and virtually full strength in his left lower extremity.  (R.pp. 472-474).

It is readily apparent that that the ALJ gave Plaintiff every benefit of the doubt in restricting him to sedentary work with the limitations noted, as Plaintiff himself indicated that he possessed the lifting capacity for light work, his objective examinations generally reflected that he had full strength in both his upper and lower extremities with a normal gait, and that his pain complaints were generally treated conservatively with medication. Stephens, 766 F.2d at 287 [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]; Guthrie v.



Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Ables v. Astrue, No. 10-3203, 2012 WL 967355 at * 11 (D.S.C. Mar. 21, 2012)["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7 p.].

While Plaintiff obviously disagrees with the conclusion reached by the ALJ, The ALJ set forth a comprehensive discussion and analysis in his decision as to why he reached the RFC contained therein, and the undersigned can find no reversible error in this analysis. Cf. Carlson, 999 F.2d at 181 [". . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Stephens, 766 F.2d at 287 [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]; Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].  Plaintiff's argument that the ALJ failed to properly evaluate his RFC is without merit. Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v. Astrue, 327 Fed.Appx. 652, 657 (7th Cir. 2009)["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Clarke, 843 F.2d at 272-273 ["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers



20

can go either way without interference by the Courts"]; see Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002); Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; see also Fisher, 869 F.2d at 1057 ["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx.  795 (4th Cir. 2012).

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.



The parties are referred to the notice page attached hereto.



_____

Bristow Marchant
United States Magistrate Judge

April 1, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

